UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ST. PAUL SURPLUS LINES INSURANCE CO.    \*CIVIL NO. 6: 10-0714

VERSUS    \*JUDGE DOHERTY

ACE AMERICAN INSURANCE CO.    \*MAGISTRATE JUDGE HILL

REPORT AND RECOMMENDATION

Judge Doherty has referred the Motion to Dismiss, or in the alternative, Motion to Transfer, filed by Ace American Insurance Company ("Ace") [rec. doc. 8] to the undersigned for Report and Recommendation. [rec. doc. 11]. Plaintiff, St. Paul Surplus Lines Insurance Company ("St. Paul") has filed Opposition to which Ace has filed a Reply. [rec. docs. 15 and 20]. Oral Argument on the Motion was held on August 18, 2010 and the Motion was taken under advisement. [rec. doc. 22].

For the following reasons, it is recommended that Ace's Motion to Transfer [rec. doc. 8] be **GRANTED**, and, accordingly, that this action be transferred to the United States District Court for the Northern District of Oklahoma pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice, and that Ace's Motions to Dismiss for lack of Personal Jurisdiction and Improper Venue pursuant to F.R.C.P. 12(b)(2) and 12(b)(3), respectively, and Ace's Motion to Transfer pursuant to 28 U.S.C. § 1406, be **DENIED AS MOOT**, since the grant of Ace's Motion to Transfer pursuant to 28 U.S.C. § 1404(a) pretermits any need for the Court to consider those Motions.

## BACKGROUND

This suit arises from the settlement by Ace of a lawsuit filed in state court in Tulsa, Oklahoma.  The facts of the underlying litigation are as follows.  Louisiana resident, Margaret Drennan, now Connick ("Drennan"), rented a vehicle from Alamo Rental, Inc. ("Alamo"), an Oklahoma corporation, in Tulsa, Oklahoma.  Drennan was in Tulsa on business for her employer, PetroQuest Energy, LLC ("PetroQuest"), a Louisiana limited liability company.  At the time of her rental, Drennan selected supplemental financial responsibility protection.  This coverage was provided by Alamo at the time of the rental pursuant to a policy issued by Ace, and delivered in Oklahoma to Alamo's parent company, Vanguard Car Rental, USA, Inc. ("Vanguard"), another Oklahoma corporation, for a combined total protection of $1,000,000.00.

After completing her business in Oklahoma, Ms. Drennan was to return the rental car to Alamo in Tulsa and fly home to Lafayette.  However, on her way to return the rental vehicle, Drennan was involved in an accident with Oklahoma resident Joy Helm ("Helm").

On March 9, 2007, Helm filed suit in state court in Tulsa for personal injury damages; her husband and disabled son asserted claims for loss of consortium.  On plaintiff's Motion for Summary Judgement, Ms. Drennan was found to be at fault for the subject accident.  Drennan was defended by Oklahoma attorney, Brad Jackson ("Jackson"), counsel retained by ACE.  PetroQuest, who was insured by St. Paul, was defended by Oklahoma attorney John Paul ("Paul").  St. Paul contends that Ace had primary coverage for the damages asserted by the Helm plaintiffs.

Helm claimed to have sustained an injury to her low back for which she underwent an L4-5 fusion, performed by an Oklahoma surgeon in Tulsa. She subsequently underwent a second surgery by another Oklahoma surgeon, also in Tulsa. She underwent an IME performed by an Oklahoma physician. Both sides retained experts, including an Oklahoma economist and vocational rehabilitation specialist retained by the plaintiff and a defense retained expert from Oklahoma to refute the plaintiff's life care plan. Helm's attorney, Mike Atkinson of Oklahoma, contended that Helm's damages exceeded $4,000,000.00. Ace's attorney, Jackson, evaluated her claim at far less.

Ace contends that PetroQuest's attorney, Paul, did not take an active role in the litigation until he became aware of the plaintiffs' intention to dismiss Drennan from the lawsuit and to proceed to trial against PetroQuest alone. On April 29, 2009, Drennan was dismissed. The next day, on April 30, 2009, PetroQuest's attorney, Paul, informed Ace's attorney, Jackson, of a proposed settlement of the lawsuit for $865,000.00. Ace complains that neither Ace nor Alamo was included in the settlement negotiations, and neither were given any meaningful opportunity to participate.

On May 1, 2009, Ace and Alamo received written notice that the case had been unilaterally settled by PetroQuest's insurer, St. Paul, for $865,000.00 plus $64,133.14 in costs. Demand was made on Alamo's parent company, Vanguard Car Rental, USA, Inc., for reimbursement of the full amount of the settlement, $929,133.14.

The instant lawsuit was filed in this court by St. Paul on April 28, 2010, seeking to recover the full amount of the settlement from Ace on theories of subrogation and unjust enrichment and, alternatively, contribution.  In response, Ace has filed the instant Motion to Dismiss for lack of personal jurisdiction and improper venue pursuant to F.R.C.P. 12(b)(2) and 12(b)(3), and an alternative Motion to Transfer pursuant to 28 U.S.C. § § 1406 and 1404(a).  St. Paul has subsequently filed a First Amended and Supplemental Complaint adding PetroQuest as an additional plaintiff, seeking, among other relief,  reimbursement of its $25,000.00 deductible under the St. Paul policy.

## LAW AND ANALYSIS

**Transfer Pursuant to 28 U.S.C. § 1404(a)**

Ace argues that this action should be transferred to the United States District Court for the Northern District of Oklahoma, for the convenience of parties and witnesses and in the interest of justice, pursuant to 28 U.S.C. § 1404(a).  Tulsa is located in the Northern District of Oklahoma.

Ace argues that one of the primary issues in this litigation will be the reasonableness of St. Paul's settlement, and that factual inquiry will require a determination of what an Oklahoma jury would have likely awarded Helm and her family members.  To make this determination, Ace argues that the testimony of attorneys Jackson, Paul and Atkinson, the three Helm plaintiffs, Ms. Helm's treating physicians, the defense IME physician, the plaintiffs' expert economist and vocational rehabilitation expert and the defense life care plan evaluator, all

Oklahoma residents, will be required. Ace further contends that the in-person, live testimony of several of these witnesses is crucial to its defense of this lawsuit, so that the trier of fact may personally observe the witnesses and make an assessment of their credibility.

While Ace acknowledges that this court has nationwide subpoena power, Ace argues that these witnesses cannot be compelled to attend trial or depositions in Louisiana and that the expenses associated with those who are willing to travel is unjustified. Moreover, Ace argues that the documents necessary to the defense of this matter are located in Oklahoma, and are more easily accessed in Oklahoma. Ace further argues that the Oklahoma federal court is the better forum to determine and apply Oklahoma law which governs the issues in this case. Ace then notes that if the case is transferred, this court would avoid having to perform a conflict analysis on every issue to ascertain differences between Louisiana and Oklahoma law, and to apply the correct law to each issue.

Finally, Ace argues that there is no local interest served by having this court decide the value of an Oklahoma personal injury case under Oklahoma law. In sum, Ace argues that this case "springs from an Oklahoma personal injury suit" which "will necessitate the presentation of Oklahoma witnesses and evidence and the application of Oklahoma law for a fact finder to decide whether St. Paul's actions were reasonable," and "the amount that ACE must pay, if any, all of which would be easier, less expensive and more expeditious in Oklahoma, the state which has a far greater interest in determining whether St. Paul can be reimbursed for its . . . actions performed in the underlying Oklahoma litigation."

St. Paul argues that transfer is not warranted because this is a court of proper venue, which has personal jurisdiction over the defendant and is the plaintiff's chosen venue. St. Paul additionally argues that the primary question before this court is a legal one, that is, the interpretation of two contracts, the Alamo rental agreement and the insurance policy issued by Ace. Moreover, St. Paul asserts that in the event that it becomes necessary for the court to determine the reasonableness of the settlement, the parties may present argument and documentation, without "input from Oklahoma witnesses", to "reconstruct what the parties and counsel were thinking about the litigation and why settlement did, or did not, seem reasonable at the time." [rec. doc. 15, pgs. 7 and 14].

For purposes of the instant analysis, the court will assume, without deciding, that this court is a court of proper venue and that this court may exercise personal jurisdiction over Ace.[1]

Title 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." District courts have "broad discretion in deciding whether to order a transfer." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (*en banc*) *citing Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) *quoting Caldwell v.*

---

[1] The undersigned notes that while Ace argues that it lacks sufficient contacts with Louisiana for the exercise of specific jurisdiction. Ace has been a licensed insurer in the State of Louisiana for over forty years, offering twelve different lines of insurance for sale in this State. Accordingly, it appears clear that Ace's contacts with Louisiana are sufficient for the exercise of general jurisdiction. It therefore also appears that under § 1391(c) venue is proper in this court.

*Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987).   However, this discretion has limitations imposed by the text of § 1404(a) and by controlling jurisprudence which interprets and applies the text of § 1404(a).

The preliminary question under § 1404(a) is whether a case "might have been brought" in the destination venue. Ace seeks to transfer this case to the United States District Court for the Northern District of Oklahoma, in Tulsa.  All agree that this civil action could have originally been filed in that Court. *See* 28 U.S.C. § 1391.

The general venue statute, 28 U.S.C. § 1391, controls a plaintiff's choice of venue. *Volkswagen*, 545 F.3d at 312.  Under § 1391(a)(1), a diversity action may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State." Under § 1391(c), when a suit is filed in a multi-district state, like Louisiana and Oklahoma, a corporation is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." *Id.* at 313. Because large corporations, often have sufficient contacts to satisfy the requirement of § 1391(c) for most, if not all, federal venues, the general venue statute "has the effect of nearly eliminating venue restrictions in suits against corporations." *Id. citing* 14D Wright, Miller & Cooper, Federal Practice & Procedure § 3802 (3d ed. 2007) (noting also that, because of the liberal, general venue statute, "many venue disputes now are litigated as motions to transfer venue under Section 1404 of Title 28").

Congress, however, has tempered the effects of this general venue statute by enacting the venue transfer statute, 28 U.S.C. § 1404. *Id*.  The underlying premise of § 1404(a) is that

7

courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a). *Id. citing Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955) and *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ("[The general venue] statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts. . . . But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment."). Thus, while a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege. *Id*.

In 1947, the Supreme Court firmly established the common-law doctrine of *forum non conveniens* in federal courts. *Id. citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 248, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (noting that "the doctrine of *forum non conveniens* was not fully crystallized" until *Gilbert*). The essence of the *forum non conveniens* doctrine is that a court may decline jurisdiction, and may actually dismiss a case, even when the case is properly before the court, if the case could be more conveniently tried in another forum. *Id. citing Gilbert*, 330 U.S. at 507.

Shortly after the 1948 Supreme Court decision in *Gilbert*, the venue transfer statute became effective. The essential difference between the *forum non conveniens* doctrine and § 1404(a) is that under § 1404(a) a court does not have authority to dismiss the case; the remedy under the statute is simply a transfer of the case, within the federal system, to another

federal venue more convenient to the parties, the witnesses, and the trial of the case. *Id.* Thus, as the Supreme Court has said, "Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience." *Id. citing Norwood*, 349 U.S. at 32; *see also Piper Aircraft*, 454 U.S. at 254 (noting the "relaxed standards for transfer"). This lesser standard for § 1404(a) venue transfers is appropriate because such transfers avoid the dangers and serious consequences which accompany *forum non conveniens* dismissals, such as the running of the statute of limitations in the forum finally deemed appropriate. *Id.* at fn 8 *citing Norwood*, 349 U.S. at 31.

That § 1404(a) venue transfers may be granted "upon a lesser showing of inconvenience" than *forum non conveniens* dismissals, however, does not imply "that the relevant factors [from the *forum non conveniens* context] have changed or that the plaintiff's choice of [venue] is not to be considered." *Id.* at 314.

The Fifth Circuit has indicated that the plaintiff's choice of venue is to be treated "as a burden of proof question", not an independent factor within the venue transfer analysis. *Id.* at 315 and fn. 10 *citing Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963) and *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the [venue] should be changed."). Thus, while "the avoidance of dismissal through § 1404(a) lessens the weight to be given" to the plaintiff's choice of venue, the movant must nevertheless show good cause for the transfer. *Id.* at 315 *citing Humble Oil*, 321 F.2d at 56.

9

This "good cause" burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled. *Id*. "When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id*. "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id*. "When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer." *Id*.

The Fifth Circuit has adopted the private and public interest factors enunciated in *Gilbert* for determining a *forum non conveniens* question, to determine whether a venue transfer under § 1404(a) is for the convenience of parties and witnesses and in the interest of justice. *Id. citing Humble Oil*, 321 F.2d at 56.

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id. quoting In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) *citing Piper Aircraft*, 454 U.S. at 241 n. 6. The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id*.

Although the *Gilbert* factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive. *Id*. Moreover, "none . . . can be said to be of dispositive weight." *Id. quoting Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004).

Applying the *Gilbert* factors, for the reasons which follow, the undersigned concludes that Ace has shown good cause for the transfer of this action to the United States District Court of the Northern District of Oklahoma. Ace has demonstrated that venue in the Northern District of Oklahoma is clearly more convenient for the parties and witnesses than the venue chosen by the plaintiff, and that transfer is in the interest of justice. Thus, transfer should be granted to the Northern District of Oklahoma.

Initially, the undersigned notes that St. Paul does not deny that the reasonableness of the settlement will be an issue in this case. To the contrary, it appears that although contractual interpretation will be one component of proof in this litigation, assuming that reimbursement is due under the contracts, the ultimate issue in this litigation will be whether the amount paid by St. Paul to the Helm plaintiffs was reasonable, thereby entitling St. Paul to full, as opposed to partial, reimbursement by Ace. St. Paul argues that the reasonableness of the settlement may be determined from a review of the written documents generated in the underlying case, including correspondence between the parties, clients and their representatives, Helm's medical records and deposition transcripts.

However, Ace adamantly argues that simply reading the cold records will not suffice, and that, accordingly, live testimony is crucial to its defense. While presentation of documentary evidence is one way to present the reasonableness issue to a court, the issue may likewise be presented through presentation of live testimony. This court should not preclude Ace from defending this lawsuit in the manner it deems appropriate.[2]

Moreover, while St. Paul asserts that only four witnesses are necessary for a proper determination of the reasonableness of the settlement, "the decider for Ace", Drennan, "the decider for PetroQuest" and "the decider for St. Paul", the undersigned cannot agree. At a minimum, the testimony of all three Oklahoma counsel may well needed; the testimony of Helm's Oklahoma medical providers and retained experts as to the nature and extent of Helm's damages may also be needed. This is particularly the case here, given the absence of a judicial determination of damages, the alleged over-evaluation of the Helms plaintiffs' damages by St. Paul and its Oklahoma counsel, and the confection of the settlement without Ace's, or its Oklahoma counsel's, participation or consent. Moreover, while Drennan is a Louisiana resident, given the Oklahoma state court's finding that Drennan was liable for Helm's damages, it does not appear that her testimony would be necessary or relevant to the

---

[2] To the extent that St. Paul and PetroQuest argue that Oklahoma law will not permit re-litigation of the merits of the underlying Helm claim in opposition to Ace's Motion to Dismiss the claims of PetroQuest, the rule of law cited by St. Paul is limited to a situation where an indemnitor has been "given an opportunity to participate in settlement negotiations . . ." *See* rec. doc. 27 *citing The Home Indemnity Company v. The Holmes Organization, Inc.*, 131 F. Supp.2d 1238, 1253 (N.D. Ok. 2000). In this case, Ace complains that neither Ace nor Alamo was included in the settlement negotiations, and neither were given any meaningful opportunity to participate in those negotiations. Accordingly, it does not appear that the rule is necessarily applicable in this case.

determination of any issue in this case.

In light of the above observations, all of the private interest factors, the relative ease of access to sources of proof, the availability of compulsory process to secure the attendance of witnesses, the cost of attendance for willing witnesses all weigh in favor of transfer; the other practical problems that make trial of a case easy, expeditious and inexpensive, clearly weigh in favor of transferring this case to the Northern District of Oklahoma.

With respect to the first private interest factor, the relative ease of access to sources of proof, it is clear that the documents necessary for the defense of this lawsuit (pleadings, correspondence and discovery in the state court suit, the attorneys' files for the Helm litigation, Helm's medical and employment records and deposition transcripts) are located in Oklahoma and are more easily accessed in Oklahoma. While St. Paul argues that with the advent of modern technology, including electronic transmission, email and photocopying, this documentary evidence may be accessed as easily in Lafayette as in Tulsa, the Fifth Circuit has rejected this same argument in *In re Volkswagen*. The *Volkswagen* court reiterated the fact that the sources of proof requirement is a meaningful factor in the analysis despite the advent of recent technology, and that while "access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Id*. at 316. To the contrary, the court held that when the documents and physical evidence are located in a division, this factor weighs in favor of transfer to that division. *Id.*

13

The second private interest factor, the availability of compulsory process to secure the attendance of witnesses, likewise weighs in favor of transfer to Tulsa. As noted by Ace, it is clear that nearly all potential witnesses regarding the issue of reasonableness of the settlement reside in Oklahoma, where the accident at issue in the underlying litigation occurred. It is equally clear that these witnesses cannot be compelled by a subpoena issued by Ace to attend trial or depositions in Louisiana. On the other hand, "absolute subpoena power for both depositions and trial" over these witnesses is available in Oklahoma, thus eliminating concerns regarding the convenience of the parties and the witnesses. *See In re Volkswagen*, 545 F.3d at 316.

Moreover, the cost of attendance for willing witnesses, the third private interest factor, weighs in favor of transfer. The expense of compensating any of the potential witnesses identified by Ace who are willing to travel from Tulsa to Lafayette, a distance of well over 500 miles each way, is impractical, inconvenient and will unduly and unnecessarily increase the costs of litigation. As found by the Fifth Circuit in *In re Volkswagen*, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 317. This is so because of the "'obvious conclusion' that it is more convenient for witnesses to testify at home and that '[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact

14

witnesses must be away from their regular employment.'" *Id*.

Moreover, while it may be more expensive for witnesses for PetroQuest or St. Paul to appear in Oklahoma, given their representations to this court of their intention to present the issues to the court by way of records, this possibility does not outweigh the interests of Ace which has stressed the crucial importance of the presentation of live testimony at trial from the witnesses identified by it.

Furthermore, given that PetroQuest has already appeared in Oklahoma in connection with the Helm lawsuit, that its employee committed a tort in Oklahoma, and that it has already paid damages she caused in Oklahoma, requiring PetroQuest to litigate repayment of that money in Oklahoma justifies any additional expense on the part of PetroQuest.

Finally, the fourth private interest factor, practical problems that make trial of this case easy, expeditious and inexpensive, are intertwined with the presence of the witnesses and exhibits in Oklahoma, as well as the public interest factors discussed below, which favor transfer to Oklahoma.

Ace concedes that there is no real difference in the amount of time necessary to try this lawsuit in Tulsa as opposed to this Court.  Hence, the first public interest factor, administrative difficulties flowing from court congestion, is neutral, neither weighing in favor of, nor against, transfer.  However, the three remaining public interest factors which are contested, weigh in favor of transfer of this lawsuit to Tulsa.

In light of the fact that this case arises from a personal injury lawsuit filed in state court in Tulsa, as a result of a motor vehicle accident which occurred in Oklahoma, in which an Oklahoma resident was injured by a vehicle driven by a Louisiana resident who was in Oklahoma conducting business for her employer, in a vehicle which was rented from an Oklahoma car rental corporation, primarily insured by the selection of supplemental financial responsibility protection made in Oklahoma, and offered through the Oklahoma Alamo dealership providing coverage required under the Oklahoma minimum financial responsibility laws and a policy issued to an Oklahoma corporation, and delivered in Oklahoma, it is apparent that Louisiana has little local interest in the resolution of this lawsuit. To the contrary, other than the fact that St. Paul chose to file the instant lawsuit in this Louisiana federal court, there is no local interest at stake herein.

Moreover, while it is true that PetroQuest, a Louisiana resident, has now been joined as a plaintiff in this lawsuit, seeking reimbursement of its $25,000.00 deductible, that local interest is minimal and not sufficient to weigh the scales in favor of having this entire lawsuit decided by this Louisiana federal court. Indeed, there is nothing to suggest that the actions of St. Paul and PetroQuest in settling the Helms' lawsuit in Oklahoma created a local Louisiana interest, and such a finding would "stretch[] logic in a manner that eviscerates the public interest that this factor attempts to capture." *See In re Volkswagen* 545 F.3d at 318.

To the contrary, it is clear that an Oklahoma court has a far greater interest in determining whether a purported excess carrier may settle an Oklahoma lawsuit brought by

Oklahoma residents as a result of an Oklahoma motor vehicle accident, within the purported underlying carrier's limits, without the underlying carrier's participation or consent, for an amount above that which the underlying carrier believed was due. Thus, the second public interest factor, the local interest in having localized interests decided at home, weighs in favor of transfer.

Likewise, the third public interest factor, the familiarity of the forum with the law that will govern the case, weighs in favor of transfer. It is beyond question that an Oklahoma court will be more familiar with Oklahoma law, which will govern the majority, if not all, relevant issues which may arise in this litigation. In its Complaint, St. Paul acknowledges that "the laws of Oklahoma apply to the causes of action asserted herein since Oklahoma has the most significant relationship to the parties, the accident, and the contracts." [rec. doc. 1, ¶ 21].

Moreover, while Ace contends that Louisiana law should apply to the employment relationship between Drennan and PetroQuest, and their respective rights and obligations, and accordingly that PetroQuest is prohibited from suing Drennan for reimbursement, that alleged Louisiana state law issue is not presently before this court as PetroQuest has not filed suit against Drennan. Moreover, while this court has the ability to determine and apply Oklahoma law, it is clearly easier for an Oklahoma court to determine and apply its own law.

Finally, the fourth public interest factor, the avoidance of unnecessary conflicts of law problems, weighs in favor of transfer. As noted by Ace, transfer would avoid this court's having to perform a conflict analysis on every issue to ascertain the differences between Louisiana and Oklahoma law, as well as which law to apply to each issue. Moreover, transfer

17

will avoid the unnecessary expense which would be borne by the parties in having to brief differences in the two states' laws for each issue to be decided by the court.

## CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that Ace's Motion to Transfer [rec. doc. 8] be **GRANTED**, and accordingly, that this action be transferred to the United States District Court for the Northern District of Oklahoma pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice, and that Ace's Motions to Dismiss for Lack of Personal Jurisdiction and Improper Venue pursuant to F.R.C.P. 12(b)(2) and 12(b)(3), respectively, and Ace's Motion to Transfer pursuant to 28 U.S.C. §1406, be **DENIED AS MOOT**, since the grant of Ace's Motion to Transfer pursuant to 28 U.S.C. §1404(a) pretermits any need for the Court to consider these Motions.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by F.R.C.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *Douglass v. United Services Automobile Association*, **79 F.3d. 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed October 11, 2010, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

18